NEELEY v. LANE et al. (No. 1135.)

(Court of Civil Appeals of Texas. Amarillo. March 14, 1917.)

1. JUDGMENT ☜18(2)—PERSONAL JUDGMENT —SUFFICIENCY OF PETITION.

In an action on a note secured by a vendor's lien on land, a petition not seeking personal judgment against a subsequent purchaser of land, who has not agreed to pay note, will not support a personal judgment against him.

2. VENDOR AND PURCHASER ☜281(3)—VENDOR'S LIEN — SUBSEQUENT PURCHASER — AGREEMENT TO PAY NOTE—EVIDENCE.

In an action on a note secured by a vendor's lien, evidence examined, and *held* not to show that subsequent purchaser who was made a party to the suit had agreed to pay note so as to authorize a personal judgment against him.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 794.]

3. COVENANTS ☜96(1)—WARRANTY—BREACH.

Failure of grantor to pay notes, secured by a lien on land, not assumed by grantee, is a breach of warranty against incumbrances.

[Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 111, 114, 116, 128, 129.]

4. EXCHANGE OF PROPERTY ☜8(2)—INCUMBRANCES ON LAND—RIGHTS OF PARTIES.

A judgment having been rendered for an incumbrance on land received by one in exchange, he is entitled to a judgment against the other party to the exchange and a lien on the land given to the extent of the amount he will be required to pay, where he did not take the land subject to incumbrance, and has exhausted his defenses against the claim.

[Ed. Note.—For other cases, see Exchange of Property, Cent. Dig. § 14.]

Appeal from District Court, Cottle County; Jo A. P. Dickson, Judge.

Action by the First State Bank of Decatur against John G. Lane, C. D. Neeley, and others, in which Neeley filed a counterclaim against Lane and another. Judgment for plaintiff, and Neeley appeals. Reformed and affirmed in part, and reversed and remanded in part.

Bell & Bell, of Paducah, for appellant. J. M. Whatley and J. M. Hawkins, both of Paducah, for appellees.

HUFF, C. J. The first State Bank of Decatur, Mich., instituted a suit complaining of S. D. Riley, L. W. Fry, C. K. Johnson, R. F. Lane, John G. Lane, and C. D. Neeley, in which it sought a judgment on a promissory note for the sum of $812.50 dated July 20, 1908, and due January 1, 1913, bearing interest from date of 10 per cent. per annum, with 10 per cent. attorney's fees. The note was executed by S. D. Riley, made payable to L. W. Fry, and was secured by a vendor's lien on a certain 160 acres of land situated in Cottle county. The note was afterwards transferred to the plaintiff bank. C. K. Johnson purchased the land from Riley, and assumed payment of the notes due on the land, among which was the one sued on. Thereafter R. F. Lane and J. G. Lane purchased the above-described property from Johnson, assuming the lien, and Neeley purchased from Lane, subject to the lien, with notice thereof. Neeley answered, admitting substantially the allegations in the petition, and filed a cross-petition against R. F. Lane and John G. Lane, stating substantially that he purchased this land from them and that they executed to him a warranty deed. This land was paid for by the exchange of property, and he did not assume to pay the note sued on. He prayed for judgment over against Lane for any sum that he might be compelled to pay to free the land from this incumbrance and to establish a lien against the property given in exchange.

The case was submitted to the jury on special issues, and the jury in answer thereto say that they believed it to be the intention of Neeley to assume the payment of the note sued on, and that he knew that this note was an outstanding vendor's lien against the land.

The assignments present error on the part of the court in refusing to instruct a verdict for Neeley on his cross-petition, and further that the evidence did not warrant the jury in so finding. Fry conveyed the land to Riley July 20, 1908, paying $400 cash, one note for $350 due January 1, 1909, and four notes for $812.50, each due, respectively, January 1, 1910, 1911, 1912, and 1913, a vendor's lien being retained in the deed and notes on the land to secure their payment. These notes were transferred to the bank by written transfer on the 27th day of January, 1910, in which the $350 note was released, having been theretofore paid. Riley and his wife conveyed the land to C. K. Johnson, they assuming as part consideration for the land the payment of four notes for $812.50 each. In this deed it is recited that each of the notes has marked upon it an extension for 12 months, and all accrued interest upon said notes to January 1, 1910, having been paid. This deed is dated July 2, 1910. On the 12th day of January, 1912, Johnson and wife conveyed the land to R. F. Lane. Lane assumed the payment of the two notes above specified

for $812.50 each, and also executed his note, payable to Johnson, for the sum of $2,738.50, payable at the First State Bank of Paducah. A vendor's lien was retained in the instrument of conveyance to secure the payment of these notes, and there was also recited in the deed that a deed of trust was executed to W. H. Abernathy as trustee to secure the $2,738.50 note. It was also recited in that deed that the plaintiff bank in this case had extended the two notes for $812.50 each to January 1, 1913 and 1914, respectively. On the 12th day of June, 1912, R. F. Lane and wife, by deed conveyed the land to C. D. Neeley, with full covenants of warranty, reciting the consideration of $4,000 cash paid by C. D. Neeley and the assumption by him of the payment of two certain promissory notes, one in the sum of $2,738.50, signed by R. F. Lane and John G. Lane, in favor of C. K. Johnson, dated January 12, 1912, bearing interest from January 1, 1912, at the rate of 10 per cent. per annum, and due January 1, 1913, the other being in the sum of $812.50, signed by S. D. Riley in favor of L. W. Fry, dated July 20, 1908, bearing interest from date at the rate of 12 per cent. per annum, the interest being paid up to January 1, 1912, and due January 1, 1913. The deed purports to have granted and sold the land to Neeley with general covenants of warranty, but expressly reserving the vendor's lien to secure payment of the notes above described.

On the 8th day of June, 1912, the following contract was entered into:

"This contract, entered into this day by and between C. D. Neeley of Dumont, party of the first part, and John G. Lane, of Paducah, Texas, party of the second part, witnesseth: That C. D. Neeley has sold and hereby agrees to convey to party of the second part good and sufficient warranty deed to his gin plant at Dumont, Texas, consisting of the entire plant, one acre of land, and the dwelling house situated on the land belonging to Pete Holler. John G. Lane has sold and hereby agrees to convey to party of the first part, by good and sufficient warranty deed, one hundred and sixty acres of land about three miles west of Paducah, Texas, known as the Rotan place, and being the same land conveyed to Lane by C. K. Johnson, in January, 1912.

"Party of the first part agrees to assume the payment of two notes against the one hundred and sixty acres of land; one being for $812.50, bearing interest at the rate of 8 per cent. per annum, and due January 1, 1913, and the other being for $2,738.50, in favor of the First State Bank of Paducah, bearing interest from date at the rate of 10 per cent. per annum, and due January 1, 1913. The party of the second part agrees to execute his promissory note for the sum of $1,000.00 in favor of party of the first part, due December 15, 1912, bearing interest at the rate of 10 per cent. per annum from date, secured by a lien on the joint property; this note, according to agreement, representing the difference in value of the two properties traded. Each party here agrees to furnish an abstract to property conveyed showing good and merchantable title, and a reasonable time shall be allowed to either party in which to correct same if found necessary, this contract to be consummated within ten days from date hereof, and either party hereto failing or refusing to carry out the terms of this contract shall forfeit to the other the sum of $500.00, for which the aggrieved party shall have his right of action by law."

The evidence in this case shows that after Neeley purchased he paid off the note for $812.50 assumed by him, and it is also agreed by the parties that the two Lanes are insolvent, and notoriously so. It is also shown that the $1,000 note executed by Land to Neeley for the difference between the two properties was paid. Neeley and Abernathy both swear positively that Neeley did not assume payment or agree to pay the note sued on in this case. Neeley says he knew nothing about the note, but he left the matter largely in the hands of Mr. Abernathy to draw up the contract, and Abernathy states that Neeley did not agree to pay but one note for $812.50, and while it was left to him to draw the papers and the deed, he in some manner overlooked the fact that the time extending the payment of the notes had been recited in the deed, and that they had been so extended for one year, and for that reason doubtless he did not mention the matter to Neeley. Lane's testimony is to the effect that he procured a statement of the indebtedness against the land before he and Neeley went to look at the land and he told Neeley that he could go to Abernathy, who would figure up what was due, and that he many not have it exactly right, but that Abernathy could tell him what it was; that he had the abstract and all the papers. He testifies that he first offered $500 "to boot" between the places, and that Neeley should assume what he owed the First State Bank, and what was against the farm; that Neeley said he would not do that, but if he would give him $1,000 "to boot" that he would trade. He then says that he went in and told Abernathy that they had traded, and Neeley would assume all of his indebtedness at the First State Bank, and also the indebtedness against the farm. He testified that he did not know anything about "this" note (the note sued on we presume) until Abernathy called him into the director's room later and told him there was another note against the land. He told Abernathy that he (Abernathy) had the abstract and deed in front of him and asked why he did not put it in, and Abernathy said it was only an oversight of his, and that is how it came to get in this shape. He states that he would not have traded in the manner and at the price agreed to be paid with the $812.50 outstanding, because he was paying more than the gin was worth at that time; that he was insolvent and had no money to operate upon. He testified that he did not tell Neeley that there were outstanding two $812.50 notes against the property, and that he did not know anything about it until Abernathy told him, and, so far as he knew, Neeley did not know at the time he bought the land that there was but one $812.50 note against it. There is one witness also, Mr. James, who

testified that Neeley told him that he was to assume the indebtedness on the place. Neeley says he would not have made the trade he did if he had known that there was outstanding the $812.50 note sued on in this case.

[1] The judgment rendered by the court in this case is rendered against Neeley personally for the principal, interest, and attorney's fees of the note. Under the pleadings of the plaintiff no personal judgment was sought against Neeley, and it occurs to us that the court was not authorized to render a personal judgment for the debt against Neeley under the plaintiff's petition, as he could only foreclose the lien against the land for that amount, foreclosing the rights of Neeley thereto. This, however, is not assigned as error by Neeley, but we simply call attention to it for the reason that we do not believe the petition will support the judgment.

[2] The facts adduced in this case we do not think are sufficient to show an agreement between Lane and Neeley that Neeley should pay the $812.50 sued on. Neeley and Abernathy both swear positively that Neeley was not to pay it. The recited consideration in the deed shows that he was only to pay one note for that sum, which he paid, and the written contract expressly provides that he was to pay only one note for that sum, while the evidence shows there were two notes for that amount outstanding. Lane admits that he never said anything about the two notes for that amount being against the land to Neeley, only stating that the abstract showed what was against the land, and certainly, if Lane and Neeley did not discuss this note in any way, and it was not mentioned between them, there could have been no agreement to pay it.

[3, 4] Lane's covenant of warranty was breached in the fact that there was this outstanding vendor's lien note, which he has not paid, and which the appellant, Neeley, will be required to pay in order to prevent the sale of his land. He therefore was entitled to recover on his warranty for the amount which he will be compelled to pay, and he should have judgment for whatever amount he is forced to pay in order to clear his land from this incumbrance. This being an exchange of land to the extent of the amount paid by him, he would have a lien against the property exchanged for the 160 acres in question. This case will fall under the rule established by the Supreme Court in White v. Street, 67 Tex. 177, 2 S. W. 529; also Parish v. White, 5 Tex. Civ. App. 71, 24 S. W. 572; Seibert v. Bergman, 44 S. W. 872.

We have concluded not to reverse and render the case as requested, but to remand the case for further trial. The appellee Lane does not allege or pretend that there was fraud in inducing him to sign the written contract. He only contends there was a mistake on the part of Abernathy in failing to mention the note in the contract, and that there was a contract between him and Neeley that he assumed the payment of this note. As above suggested, the fact that this note was outstanding was never discussed between Neeley and Lane. This is clearly inferable from Lane's testimony; therefore there could have been no agreement. If the facts upon another trial are the same as upon this, the court should instruct a verdict for Neeley and establish a lien against the property exchanged as prayed for.

The judgment in this case will be reformed so as not to render a personal judgment against Neeley for the amount sued for, but in all other respects the judgment of the bank will be affirmed, and only the issues between Neeley and Lane, as set up by the cross-petition of Neeley, will be reversed for trial in the court below.

Affirmed in part, and reversed and remanded in part.